IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUNCAST CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-CV-9965 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| LOUIS THURMAN and KETER PLASTICS, LTD., | ) ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Suncast Corporation ("Suncast"), an in-state employer, brings this action against Louis Thurman ("Thurman"), its out-of-state, former employee, and Keter Plastics, Ltd. ("Keter"), an out-of-state entity. Suncast, a designer, manufacturer, and distributor of resin products, hired Thurman, who lives in Georgia, in February 2022. In connection with his work at Suncast, Thurman signed the Suncast Corporation Trade Secret and Confidentiality Agreement ("Confidentiality Agreement") and the Employee Cell Phone Allowance Agreement (the "Cell Phone Agreement"). Approximately three-and-a-half years later, in August 2025, Thurman resigned and joined one of Suncast's competitors, Keter U.S. Inc. In this action, Suncast alleges that (1) defendants violated the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*; (2) Thurman breached the Confidentiality Agreement and the Cell Phone Agreement; (3) Thurman breached his fiduciary duties; (4) Keter aided and abetted Thurman's breach of fiduciary duties; and (5) Keter tortiously interfered with the Confidentiality Agreement.

Keter and Thurman have separately moved to dismiss Suncast's complaint for lack of personal jurisdiction. Plaintiff filed responses, (Dckt. ##19, 20), and each defendant replied,

(Dckt. ##21, 22).  For the reasons explained below, Keter's motion to dismiss, (Dckt. #10), is granted and Thurman's motion to dismiss, (Dckt. #16), is denied.

I.     **Legal Standard**

A challenge to a court's exercise of personal jurisdiction over a defendant is made under Federal Rule of Civil Procedure 12(b)(2).  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Walden v. Fiore*, 571 U.S. 277, 283 (2014), *quoting Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014).  Illinois employs a long-arm statute which applies the same standard as federal due process: a defendant must have sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017), *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Physical presence in the forum state is not required, but there must be sufficient minimum contacts such that the defendant "should reasonably anticipate being haled into court there."  *Brook*, 873 F.3d at 552.

A plaintiff may demonstrate personal jurisdiction over a defendant through either general or specific jurisdiction.  *See Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010).  General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up).  In contrast to general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Id.* (cleaned up).  Plaintiff bears the burden of establishing that personal jurisdiction exists.  *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball,*

*Inc.*, 751 F.3d 796, 799 (7th Cir. 2014); *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010).

To determine whether Suncast has met its burden here, this Court may consider affidavits from both parties. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). However, where, as here, the court rules on defendant's motion to dismiss based on the submission of written materials and without the benefit of an evidentiary hearing, the plaintiff "need only make out a prima facie case of personal jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (cleaned up). "In evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (cleaned up).

With these principles in mind, the Court turns to the arguments presented in defendants' motions.

## II. Discussion

Defendants argue that this Court lacks personal jurisdiction over them. As explained below, Suncast has made a prima facie showing that personal jurisdiction is proper over Thurman, but not Keter.

### A. Plaintiff Fails to Make Out a Prima Facie Case of Personal Jurisdiction Over Keter.

#### 1. General Jurisdiction

"There are two 'exemplar bases' where an organization is 'essentially at home' for general-jurisdiction purposes: its state of incorporation and principal place of business." *Tagliere v. Horseshoe Hammond, LLC*, No. 22 C 6176, 2023 WL 3886135, at *2 (N.D.Ill. June 8, 2023), *quoting Daimler AG*, 571 U.S. at 137; *see also Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 968 (7th Cir. 2015) ("[T]he Court has identified only two places where [an

3

organization is 'essentially at home']: the state of the corporation's principal place of business and the state of its incorporation."). Neither basis applies here. As alleged in Suncast's complaint, (Dckt. #1-1 at 6), and confirmed by the Declaration of Nir Palistrant, (Dckt. #10-1 at 70), Keter is an Israeli limited liability company that was organized under Israeli law. Keter does not have a principal place of business, any offices, or any employees in Illinois. (*Id.* at 71).

Suncast nonetheless argues that this Court can exercise general jurisdiction over Keter based on the fact that Keter "regularly ships substantial products" to Illinois, (Dckt #19 at 4), "sells a plethora of its products to customers in Illinois," (*id.* at 3), and maintains "major" relationships with clients based in Illinois, (*id.* at 4). To the contrary, when faced with similar facts, courts have held that they lack general jurisdiction over the foreign corporation. *See, e.g.*, *Roller Bearing Co. of Am., Inc. v. MostonTR Pazarlama Dokum Ve Makina San., Ltd. Sti.*, No. 20 C 6924, 2021 WL 5882146, at *4 (N.D.Ill. Dec. 12, 2021) (finding the court lacked jurisdiction over defendant who "merely ships a substantial amount of products" to Illinois); *Shrum v. Big Lots Stores, Inc.*, No. 3:14-CV-03135-CSBDGB, 2014 WL 6888446, at *7 (C.D.Ill. Dec. 8, 2014) (finding "fairly extensive and deliberate" contacts with Illinois far beyond the contacts alleged here—including having a physical facility, registering to do business, and maintaining a registered agent—were not sufficient contacts to exercise personal jurisdiction over foreign corporation).

To support its argument, Suncast relies entirely on cases which address whether a defendant's sales in the forum state are sufficient to establish general personal jurisdiction. (Dckt. #19 at 9, 11). But *all* of the cases Suncast cites predate *Kipp*, where the Seventh Circuit explained that general jurisdiction requires "more than the substantial, continuous, and systematic course of business that was once thought to suffice." 783 F.3d at 698. Accordingly,

Suncast's jurisdiction arguments based on the volume of Keter's sales in Illinois and its general business dealings with clients in this state are unavailing. As such, Suncast has failed to make out a prima facie case of general personal jurisdiction over Keter.

### 2. Specific Jurisdiction

The Court next considers whether it may exercise specific jurisdiction over Keter. In order to do so, three essential requirements must be met. *See NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 623 (7th Cir. 2022). First, Keter's "contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state." *Id.*, quoting *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 398 (7th Cir. 2020). Second, "the plaintiff's alleged injury must have arisen out of [Keter's] forum-related activities." *Id.*, quoting *Curry*, 949 F.3d at 398. And third, "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.*, quoting *Curry*, 949 F.3d at 398. "For a State to exercise jurisdiction consistent with due process, [Keter's] *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 801, quoting *Walden*, 571 U.S. at 284. The relationship between [Keter] and the forum state must also "arise out of contacts that the defendant *[it]self* creates with the forum . . . ." *Id.* (cleaned up).

"Whether a defendant has purposefully directed activities at a forum depends in large part on the type of claim at issue." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012) Because there is no "pendent or supplemental theory of specific personal jurisdiction," "personal jurisdiction over the defendant must be established as to each claim asserted." *MG Design Assocs., Corp. v. Costar Realty Info., Inc.*, 224 F.Supp.3d 621, 629 (N.D.Ill. 2016), *on reconsideration in part*, 267 F.Supp.3d 1000 (N.D.Ill. 2017).

5

First, Suncast argues that personal jurisdiction over Keter is proper with respect to Suncast's misappropriation of trade secrets claim because "Keter misappropriated trade secrets from an Illinois corporation, causing Suncast to suffer injury in Illinois."[1] (Dckt. #19 at 13). In support of its argument, Suncast relies on *TEKsystems, Inc. v. Modis, Inc.*, No. CIV.A. 08 C 5476, 2008 WL 5155667, at *3 (N.D.Ill. Dec. 5, 2008) and *Montel Aetnastak, Inc. v. Miessen*, 998 F.Supp.2d 694, 712 (N.D.Ill. 2014).

In *TEKsystems*, the court found personal jurisdiction over a defendant who took an affirmative step in Illinois related to the misappropriation. *See TEKsystems, Inc.*, 2008 WL 5155667, at *3. Specifically, "[defendant] solicited Lukas to breach his employment agreement, and encouraged him to misappropriate TEKsystems' customer information from its Downers Grove, Illinois office." *Id.* The court found this conduct was sufficient to confer personal jurisdiction over the defendant in Illinois. In *Montel*, the court found personal jurisdiction was proper where the defendant misappropriated confidential information during negotiations with an Illinois-based company. 998 F.Supp.2d at 712. Both *TEKsystems* and *Montel* reiterate that the relevant focus of this Court for purposes of determining whether Keter is subject to jurisdiction in Illinois is the relationship between "[Keter], the forum and the litigation." *Walden*, 571 U.S. at 291.

Here, Suncast devotes significant space in its opposition brief to describing *Thurman* and *Suncast's* relationship to the forum state. These supposed contacts with Illinois are irrelevant to

---

[1] To the extent Suncast argues that personal jurisdiction over Keter is proper because Suncast was purportedly injured in Illinois, that argument is rejected. The fact that the plaintiff's injury occurred in the forum state, standing alone, is insufficient to demonstrate minimum contacts. *MG Design*, 224 F.Supp.3d at 631–32; *see also Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

6

a jurisdictional analysis of whether *Keter* has sufficient contacts with Illinois. *See, e.g., Castelaz v. Estee Lauder Companies, Inc.*, No. 22 CV 5713, 2024 WL 136872, at *3 (N.D.Ill. Jan. 10, 2024) ("A plaintiff, third party, or codefendant cannot be the sole link between a defendant and the forum."). Relevant to its misappropriation claim, Suncast does not allege that *Keter* acquired, disclosed, or used Suncast's confidential information in Illinois. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 576–77 (7th Cir. 2020) ("Because the defendants themselves did not acquire, disclose, or use J.S.T.'s trade secrets in Illinois, the link between the Illinois sales and their misappropriation of J.S.T.'s trade secrets is attenuated."). Thus, there is no basis for this Court to assert specific jurisdiction over Keter with respect to Suncast's misappropriation claim.

Suncast, in a footnote and without legal authority, argues that Keter nonetheless directed its actions at Illinois because "Keter Plastics Ltd." is the "labeled shipper of products through the Illinois International Port District for direct sale to Illinois customers" and because the CEO of Keter, Udi Sagi, recruited Thurman. To begin with, Suncoast has waived this argument by advancing it in such a perfunctory manner. *See, e.g.*, *Chicago Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 817 (7th Cir. 2018) ("Because Chicago Joe's raised the issue only in a footnote and without any citation, this issue was waived."); *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) (arguments which are underdeveloped or unsupported by legal authority are waived). What's more, Suncast has put forth no evidence to contradict Thurman's sworn declaration that he did not contact or interact with Keter in Illinois, nor does the record support a finding that Keter was present in Illinois for any of its discussions with Thurman. Finally, Suncast has shown, at best, one instance where Keter mailed goods from Israel to Illinois (notably, through New York), but—as is necessary for specific jurisdiction—

7

Suncast fails to explain how its alleged injury arose out of this sale. *Curry*, 949 F.3d at 398 ("the plaintiff's alleged injury must have arisen out of [Keter's] forum-related activities."). The Court's determination that it lacks personal jurisdiction over Keter therefore remains unchanged.

Suncast further argues that personal jurisdiction over Keter is appropriate with respect to its aiding and abetting the breach of fiduciary duty and tortious interference with contract claims. (Dckt. #19 at 14–15).[2] In this instance, Suncast focuses on the fact that Keter solicited Thurman, an employee of an Illinois company, and its assertion that Keter used misappropriated confidential information that it obtained from Thurman to "secure sales contracts" for stores in Illinois. (*Id.*; Dckt. #20-1 at 21). But once again, Suncast has not established a relationship between "[Keter], the forum and the litigation." *Walden*, 571 U.S. at 291. The record does not reflect that Keter communicated with an individual or entity located in Illinois, or that Keter itself was in Illinois at the time of the relevant communications. Accordingly, there is no basis for this Court to assert specific jurisdiction over Keter with respect to Suncast's claims against it. Keter's motion to dismiss is therefore granted.

---

[2] In support of its arguments, Suncast cites *Chicago Transit Auth. Retiree Health Care Tr. v. Dilworth Paxson, LLP*, No. 19-CV-07570, 2020 WL 6393006, at *4 (N.D.Ill. Nov. 2, 2020) and *Pasulka v. Sykes*, 131 F.Supp.2d 988, 993 (N.D.Ill. 2001). Neither is applicable here. In *Dilworth*, the court found the defendant's communication to a Chicago-based company was not "random, fortuitous, or attenuated" where the "the communication was specifically addressed to a resident of Illinois with the purpose of accomplishing the alleged torts." *Dilworth*, 2020 WL 6393006, at *4. In *Pasulka* the court found personal jurisdiction where the out-of-state defendant's "telephone communications [with the plaintiff who was located in Illinois] were about partnership activities to be carried out in Illinois" and the plaintiff's "claim for breach of . . . fiduciary duty" was related to those communications. *Pasulka*, 131 F.Supp.2d at 993. Here, by contrast, there is nothing in the record to support a finding that Keter communicated with an individual or entity located in Illinois.

### B. Suncast Has Made Out a Prima Facie Case of Personal Jurisdiction Over Thurman.

#### 1. Specific Jurisdiction

In its opposition to Thurman's motion to dismiss, Suncast states this "Court need only look to whether Thurman is subject to specific personal jurisdiction in Illinois." The Court thus turns to the parties' arguments on specific jurisdiction.

##### i. Misappropriation of Trade Secrets

To demonstrate that Thurman is subject to personal jurisdiction in this forum with respect to its misappropriation of trade secret claim, Suncast must show that Thurman knowingly acquired, disclosed, or used Suncast's trade secrets in Illinois. *See J.S.T. Corp.*, 965 F.3d at 576–77. Suncast argues that Thurman accessed and downloaded files containing Suncast's confidential information and trade secrets from Suncast servers located in Illinois, and this act is sufficient to establish personal jurisdiction. The Court agrees.

In similar cases involving servers, courts have held there is no personal jurisdiction absent allegations that the defendant knew that the servers he was taking the information from were in Illinois. *See, e.g.*, *Liqui-Box Corp. v. Scholle IPN Corp.*, No. 19 C 4069, 2020 WL 5593755, at *7 (N.D.Ill. Sept. 18, 2020) ("Without, at the very least, evidence that Voelkl knew Scholle's servers were located in Illinois, his remote use of email communications and data stored on those servers is not properly considered a purposeful contact with the state of Illinois."); *see also GTY Tech. Holdings Inc. v. Wonderware, Inc.*, No. 24 CV 9069, 2025 WL 1455762, at *7 (N.D.Ill. May 21, 2025) (no purposeful contact where "there is no allegation that Lewis knew that the servers he was pulling the alleged information from were in Illinois.").

Here, by contrast, Suncast has submitted testimony that Thurman knew that Suncast's servers were located in Illinois because he visited Suncast's Illinois office where the servers were

9

housed hundreds of times, and knew that the office in Georgia did not have servers. (Dckt. #20-1 at 19). Furthermore, Suncast alleges that the confidential and trade secret information at issue in this case was housed on those servers, and that Thurman accessed it. (*Id.* at 19–20); *compare Tower Commc'ns Expert, LLC v. TSC Constr., LLC*, No. 18 C 2903, 2018 WL 5624268, at *8 (N.D.Ill. Oct. 30, 2018) (finding the fact that files were stored on servers in Illinois was "not enough on its own to confer jurisdiction over [defendant] because Plaintiff has not alleged or demonstrated that these 'files' contain information that is implicated by Plaintiff's tort claims.").

At bottom, Thurman obtained the information at issue—namely the materials copied from his Suncast laptop to a USB—from his Illinois-based employer. *See GTY Tech., Inc.*, 2025 WL 1455762, at *7 (plaintiff made a prima facie showing of personal jurisdiction over remote employee where the "remote employment was closely tied to Illinois" and defendant "obtained the information at the heart of th[e] dispute from his Illinois-based employment."). Accordingly, the Court finds that Suncast has established a prima facie case of personal jurisdiction regarding its misappropriation claim.

### ii. Breach of Contract Claims

In breach-of-contract cases, "[t]he specific jurisdiction inquiry is one of the totality of the circumstances." *See AS Engine Leasing, LLC v. Vision Airlines, Inc.*, No. 14 C 1436, 2014 WL 6461760, at *3 (N.D.Ill. 2014) (citing *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008)). Relevant here, a "contract between a state resident and an out-of-state defendant alone does not automatically establish sufficient minimum contacts." *Citadel Grp. Ltd.*, 536 F.3d at 761; *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (finding that contacts "must be 'with the forum State itself, not . . . with persons who reside there.'") (cleaned up). Instead, to determine whether there were sufficient minimum contacts,

the Court considers "the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . ." *Citadel Grp. Ltd.*, 536 F.3d at 761 (cleaned up). "The crucial question is whether [Thurman] should have 'reasonably anticipate[d] being haled into court' in Illinois." *See Lukas Mktg. v. Prince George's Cmty. Coll.*, No. 1:13–cv–04062, 2013 WL 5818592, at *4 (N.D.Ill. 2013) (cleaned up).

Thurman argues that he lacks contacts with Illinois—he points out that he is a Georgia resident, has never lived in Illinois, does not have property, investments or assets in Illinois, and that he was in Georgia when he moved files from his Suncast laptop to a USB drive.

Nevertheless, the record contains enough ties to Illinois to support personal jurisdiction over Thurman. Thurman "voluntarily entered into an employment relationship with an Illinois corporation headquartered in Illinois" and "reaped the benefits of working for a company based in the forum state." *Tekway, Inc. v. Agarwal*, No. 19-CV-6867, 2020 WL 5946973, at *6 (N.D.Ill. Oct. 7, 2020). Furthermore, Thurman regularly visited Suncast's facilities in Illinois (and swiped his badge a total of *569 times* at those facilities); regularly communicated with Suncast employees and clients located in Illinois as part of his work duties; and signed the Confidentiality Agreement which created "continuing obligations" to Suncast. *Burger King*, 471 U.S. at 476 (explaining that where a defendant "has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there.") (cleaned up); *see also Tekway, Inc.*, 2020 WL 5946973, at *7–8 (finding specific personal jurisdiction of individual defendant who never stepped foot in Illinois where employe entered into an employment relationship with an Illinois company, "regularly" communicated by phone, email, and messaging applications with the company in Illinois, signed

11

an employment contract that created continuing obligations with Tekway); *W. Capra Consulting Grp., Inc. v. Snyder*, No. 1:19 C 4188, 2019 WL 3935045, at *6 (N.D.Ill. Aug. 20, 2019) ("many communications between Snyder and W. Capra employees in Illinois alone would likely suffice to subject Snyder to jurisdiction in an Illinois court" where Snyder only traveled to Illinois for social engagements).

To reiterate, Thurman obtained the information at issue from his Illinois-based employer. *See GTY Tech., Inc.*, 2025 WL 1455762, at *7. Accordingly, the Court finds that Suncast has established a prima facie case of personal jurisdiction regarding its breach of contract claims.

### iii. Breach of Fiduciary Duty Claim

Suncast alleges that Thurman breached his fiduciary duty by "obtaining, retaining, and misusing Suncast property, including its Confidential Information and Trade Secrets." (Dckt. #1-1 ¶84). Thurman argues that Suncast has not alleged any facts which suggest Thurman's alleged, disloyal conduct occurred in Illinois, and Thurman has submitted undisputed evidence which shows that he has "not had any contact or interactions with Keter in the State of Illinois." (Dckt. #21-1).

Again, as demonstrated above, Suncast argues that Thurman accessed and downloaded files containing Suncast's confidential information and trade secrets from Suncast servers located in Illinois, and this act is sufficient to establish personal jurisdiction. *See supra*, Section II(B)(1)(i). *See GTY Tech., Inc.*, 2025 WL 1455762, at *7 (finding personal jurisdiction in case alleging, among other things, misappropriation of trade secrets, breach of contract, and breach of fiduciary duty, where "the heart of this dispute is the allegation that the defendants have stolen and misused the plaintiffs' trade secrets.").

12

### 2. Fair Play and Substantial Justice

To complete its personal jurisdiction analysis, the Court must also ensure that its exercise of personal jurisdiction won't offend "traditional notions of fair play and substantial justice." *Curry*, 949 F.3d at 402 (cleaned up). The Court considers the following factors: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (cleaned up).

Thurman does not address any of these elements in his briefs, such that any arguments regarding them are waived. *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012). Regardless, courts routinely find it is not so unfair for an employee to litigate an employment dispute in the employer's home state such that it implicates the Due Process Clause. *See Tekway, Inc.*, 2020 WL 5946973, at *8–9; *GTY Tech.*, 2025 WL 1455762, at *6–7 (finding "traditional notions of fair play and substantial justice" were not offended where a former, Canada-based employee would be subject to litigation in Illinois). Furthermore, given that "much of litigation activity occurs remotely," it does not appear to this Court that litigating in Illinois would be burdensome to Thurman, particularly where Thurman frequently traveled to Illinois in connection with his employment at Suncast, and Suncast is located in the forum state. *See GTY Tech*, 2025 WL 1455762, at *8; *see also Liqui-Box Corp.*, 2020 WL 5593755, at *8. Therefore, Thurman has not met his burden to defeat personal jurisdiction and his motion to dismiss for lack of personal jurisdiction is denied.

## CONCLUSION

For the reasons set forth above, Keter's motion to dismiss, (Dckt. #10), is granted; Keter is dismissed without prejudice; and Thurman's motion to dismiss, (Dckt. #16), is denied.

**Date: August 27, 2025**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**Jeffrey I. Cummings**
**United States District Court Judge**